UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,

v.

Shawn Carter

       Defendant.

_____/

Case: 2:26−cr−20514
Assigned To : Grey, Jonathan J.C.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 8/5/2026
Description: INFO USA V. CARTER (AB)

Violation:
18 U.S.C. § 1349

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. In response to the novel coronavirus disease (Covid-19) pandemic, the federal government took several steps to provide urgently needed financial assistance to the States.

2. The Families First Coronavirus Response Act (FFCRA), which became law on March 18, 2020, provided flexibility for state unemployment insurance agencies and additional administrative funding to respond to the Covid-19 pandemic.

3. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law on March 27, 2020, and further expanded the ability of the states to provide unemployment insurance (UI) for many workers impacted by the COVID-

1

19 pandemic, including workers who were not ordinarily eligible for unemployment benefits.

4.     The Federal Pandemic Unemployment Compensation (FPUC) program was created under the aforementioned statutes and allowed eligible individuals who are collecting certain UI benefits, including regular unemployment compensation, to receive an additional $600 in federal benefits per week for weeks of unemployment ending on or before July 31, 2020.

5.     Additionally, the Pandemic Emergency Unemployment Compensation (PEUC) program was created and allowed those who have exhausted benefits under regular unemployment compensation or other programs to receive up to 13 weeks of additional, federally funded benefits. Additional legislation extended many of these federally backed UI benefits until early September 2021. Collectively, the funds flowing from these programs became known as Pandemic Unemployment Assistance (PUA).

6.     In order to obtain any of the above-referenced benefits, an individual needed to initiate a claim. The overwhelming majority of unemployment claims were filed online through state-organized websites.  In most cases, in order to be eligible for unemployment benefits, a worker must demonstrate a certain level of earnings in several quarters immediately preceding the application.  The amount of unemployment benefits that a claimant might be eligible for depends on a variety

2

of factors, including, but not limited to, the length of his or her previous employment and the amount of wages he or she earned.   However, under the programs outlined above, certain individuals may have become eligible for UI benefits in the first instance, or eligible for a greater amount of UI benefits than they would have been if not for various federal programs.

7.      Each state administered a separate UI program through its state workforce agency ("SWA"), but all states followed the same guidelines established by federal law. SWAs had different ways of accepting claims/applications and certifications, and different manners of providing claimants with pandemic UI benefits.

8.      In the State of Michigan, the UI system was administered by the Unemployment Insurance Annecy (MUIA), which is part of the State of Michigan's Department of Labor and Economic Opportunity.

9.      In the State of California, the UI system was administered by the Employment Development Department (EDD).

10.     Normally (in the absence of fraud), an unemployed worker initiates a UI claim.  This can be done either in person, over the telephone, or via the internet. During the Covid-19 pandemic, most UI claims were filed online, through SWA websites.

11.     After an unemployment claim was accepted, the initial unemployment benefit was transferred into an account associated with a bank, a prepaid debit

card, or a UI debit card.  Multiple states, including Michigan and California, provided UI benefits to a claimant using a debit card, issued by Bank of America (BOA), which was mailed to the claimant through the USPS. The unemployment benefits were loaded onto the debit card electronically, and additional benefits were loaded onto the card electronically every two weeks.

## COUNT ONE
### 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud

12.     The allegations in paragraphs 1 – 11 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

13.     Beginning in or around March 2020, and continuing through at least March 2022, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant, SHAWN CARTER, did knowingly, intentionally, and voluntarily combine, conspire, confederate, and agree with one or more other individuals, known and unknown to the government, to commit wire fraud.  That is, the defendant and his associates, with the intent to defraud, knowingly devised and executed a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations.

14.     The purpose of the scheme and artifice to defraud was for the defendant and otehrs to unlawfully obtain Pandemic Unemployment Assistance (PUA) benefits to which they were not entitled. In executing this scheme, the defendant transmitted

4

and caused the transmission of writings, signals, and sounds by means of wire communication in interstate commerce.

15. It was part of the scheme and artifice that members of the conspiracy electronically submitted false and fraudulent UI benefit claims to a variety of states (primarily Michigan, California, New York, and Pennsylvania), in the name(s) of various individuals, without those individuals' knowledge or approval.

16. It was further a part of the scheme and artifice that members of the conspiracy would use these individuals' Social Security Numbers and other personally identifiable information (PII) in the course of the UI benefit claim submission process.

17. It was further a part of the scheme and artifice that, for each of the submitted UI benefit claims, members of the conspiracy would falsely certify that the purported claimant was unemployed due to Covid-19.

18. It was further a part of the scheme and artifice that, for each of the submitted UI benefit claims, members of the conspiracy would either (1) cause one of the issuing banks, to include Bank of America, to mail a debit card to an address within their control, or (2) cause one of the issuing banks to deposit benefits into an account controlled by members of the conspiracy. These debit cards (or bank accounts) were then loaded, electronically, with state and federal UI benefits by the various state agencies responsible for administering their respective UI programs,

5

causing wire transmissions in, and affecting, interstate commerce. The debit cards were then mailed to addresses controlled by the defendants or his associates.

19.     It was further a part of the scheme and artifice that once members of the conspiracy obtained these debit cards, they would use them to make withdrawals from various ATMs in the Eastern District of Michigan, again causing wire transmissions in, and affecting, interstate commerce.

20.     In total, the members of the conspiracy submitted more than 400 fraudulent claims and obtained more than $4,400,000 in PUA benefits.

21.     All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

22.     The allegations set forth in Count One of this Information are hereby incorporated by reference for purposes of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c).

20.     Upon being convicted of the offense in violation of Title 18, United States Code, Section 1349, as charged in Count One of this Information, the Defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from, any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c).

21.    Substitute Assets:  If the property described above as being subject to

forfeiture, as a result of any act or omission of the Defendant:

     a.  Cannot be located upon the exercise of due diligence;

     b.  Has been transferred or sold to, or deposited with, a third party;

     c.  Has been placed beyond the jurisdiction of the Court;

     d.  Has been substantially diminished in value; or

     e.  Has been commingled with other property that cannot be divided
       without difficulty;

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), and Title 28, United

States Code, Section 2461(c).

22.    Money Judgment:  Upon conviction of the violation alleged in Count One of

this Information, the United States will seek a forfeiture money judgment against

the Defendant in an amount equal to the total amount of proceeds he obtained as a

result of his violations of Title 18, United States Code, Section 1349 as alleged in

this Information.

JEROME F. GORGON, JR.
United States Attorney

*s/John K. Neal*
JOHN K. NEAL
Chief, Anti-Corruption Unit

*s/Ryan A. Particka*
RYAN A. PARTICKA
Assistant U.S. Attorney

Dated:  August 5, 2026

| United States District Court<br>**Eastern District of Michigan** | Criminal Case Cover Sheet | Case Number: 2:26−cr−20514 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based on **LCrR 57.10(b)(4)¹**: | |
| ☐Yes ☑No | **AUSA's Initials: R.A.P.** |

**Case Title:**     USA v.  Shawn Carter et al.

**County where offense occurred:**     Wayne

**Offense Type:**     **Felony**

Information – Based on prior complaint: 24-mj-30318

## Superseding Case Information

**Superseding to Case No:** _____     **Judge:** _____

**Reason:**

| **Defendant Name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

August 5, 2026
        Date

*s/Ryan A. Particka*
Ryan A. Particka
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
ryan.particka@usdoj.gov
(313) 226-9635

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence.  Cases may be companion cases even though one of them may have already been terminated